## Louisville Railway Company v. Kramer.

### (Decided December 11, 1928.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Trial.—In action against street railway for assault and battery by motorman, in which defendant denied every allegation respecting assault, awarding burden of proof and concluding argument to plaintiff held not error under Civil Code of Practice, sec. 526, since, if case had been submitted without evidence, judgment would have gone for defendant, notwithstanding plea of son assault demesne.

2. Street Railroads.—In action against street railway for assault by motorman, evidence showing motorman left place of work, walked length of car, and accosted plaintiff, making gesture as if to draw weapon, justified submission of issue as to whether motorman acted in self-defense, notwithstanding showing that motorman was hit in face and knocked down before he fired pistol, since motorman's action would constitute assault, justifying plaintiff in striking him with fist.

3. Appeal and Error.—In action against street railway for assault by motorman, error in instructing on measure of damages in failing to give instruction based on defendant's version of assault that motorman acted in self-defense held harmless, where jury evidently found under plaintiff's version of assault.

4. Assault and Battery.—$750 held not excessive for assault resulting in gunshot wound on abdomen, notwithstanding that it did not produce lasting injury, since such verdict will not be set aside unless it strikes one at first blush as being result of passion or prejudice.

PETER, LEE, TABB, KRIEGER & HEYBURN for appellant.

L. D. GREENE for appellee.

Opinion of the Court by Judge McCandless—Affirming.

In an action for assault and battery, Charles Kramer recovered a judgment for $750 against the Louisville Railway Company, and the latter appeals.

The defendant pleaded son assault demesne, and the first ground relied upon for reversal is that the court erroneously awarded the burden of proof and the concluding argument to the plaintiff. There would be much force in the argument if the defendant had expressly admitted the assault as alleged, or failed to deny it, or even had so formed its denial as to constructively admit it. Shirley v. Renick, 151 Ky. 25, 151 S. W. 357; Pitman v. Drown, 175 Ky. 677, 194 S. W. 913. However it did not adopt either of these methods, but, on the contrary, categorically denied every allegation in the petition respecting the assault. Under the pleadings, if the case had been submitted without evidence, judgment would have gone for the defendant, notwithstanding the plea of son assault demesne made in the second paragraph of the answer and this entitled plaintiff to the burden of proof. Section 526, Civil Code; Shirley v. Renick, supra.

The facts are these: In going to his work, plaintiff was accustomed to riding defendant's 5 a. m. car from his home in Portland to the intersection of Shelby and Jefferson streets, where he transferred. This car was driven by one Kendall, and he and plaintiff were both strong athletic men. On the day before the difficulty, Kendall took umbrage at some remarks made by plaintiff and a fellow passenger, Bittner, and, as they testify, was quite abusive and profane, and invited plaintiff back on the car for trouble after he had alighted, which plaintiff declined to accept. Kendall denied this, and placed all the blame on the others, saying plaintiff told him "he would get him the next morning."

The next morning plaintiff boarded the rear of Kendall's car at his home at the usual hour. While the conductor was making his change, Kendall stopped the car, went to the rear, and accosted plaintiff. In the colloquy that followed, Kendall stepped back some five or six feet in the aisle of the car, followed by plaintiff, who struck Kendall twice, knocking him down, and it is claimed by the latter stamping him in the face. Some time during the melee Kendall drew a pistol and fired twice. One of

the shots penetrated plaintiff's clothing and cut through the skin across his abdomen, though no serious developments followed. Plaintiff testifies that Kendall struck his pocket as he came down the aisle and said: "You made the remark that you were going to get me. There is not a better time than right now." He denied making that remark and says that he remonstrated, but Kendall was obdurate and stepped back from the rear door into the car, reaching in his pocket as if to draw a weapon. While in this position plaintiff stepped forward and struck him in the face. At this juncture Kendall drew his pistol, and he struck him again. Kendall swerved and fired, fell down, and shot again after he fell. He placed his knee on Kendall, and the conductor came in and said, "Let him up," and he told him he would if he would let the conductor get the gun. Kendall rolled over with his pistol in his hand, and plaintiff got it, and Kendall kicked him in the stomach. Kramer is corroborated by his mother, who was present outside the car.

Kendall claims that on the day previous Kramer told him that "he would get him the next morning," and that day as the car passed where he was standing he shook his fist, saying, "G—— d—— you, I am going to get you." When Kramer got on the rear of the car, he feared he would come up behind him, and for that reason went to the rear and repeated what Kramer had said; that he was unarmed and did not want any trouble, but Kramer struck him over the head with a pistol and knocked him to the floor, fired the pistol, and kicked him in the face, rendering him unconscious. Kendall is partially corroborated by the conductor and one other witness, though the proof strongly tends to show that he possessed and fired the pistol, and that Kramer was unarmed.

The court gave the following instructions to the jury:

"If you believe from the evidence that on the occasion referred to therein the defendant's motorman, Kendall, not in his necessary or to him apparently necessary self-defense as defined in Instruction No. 2, assaulted, beat or shot the plaintiff, Charles Kramer, and thereby injured him, you will find for the plaintiff Charles Kramer and against the defendant Louisville Railway Company; but unless you so

believe from the evidence you will find for the defendant Louisville Railway Company and against the plaintiff, Kramer.

"(2)   If you believe from the evidence that at the time the motorman, Kendall, assaulted the plaintiff, Charles Kramer, if you believe from the evidence that he did assault him, as submitted to you in the first instruction, said Kendall in good faith believed and had reasonable grounds to believe that he was then and there in danger of bodily harm about to be inflicted upon him by the plaintiff, Kramer, and that said Kendall used no more force than was necessary or appeared to him in the exercise of a reasonable judgment to be necessary to protect him from injury at the hands of plaintiff Kramer you will find for the defendant Louisville Railway Company, unless you believe from the evidence that its motorman, Kendall, brought on the difficulty by first attempting to assault the plaintiff Kramer in which event you cannot find for the defendant, Louisville Railway Company, on the ground of self-defense on the part of its motorman, Kendall.

"I further instruct you that words do not justify an assault, and that neither the plaintiff Charles Kramer, nor the defendant's motorman, Kendall, had the right to strike the other because of any words that were used by either.

"(3)   If you find for the plaintiff, Charles Kramer, you may award him such sum in damages as you believe from the evidence will fairly compensate him for any physical or mental suffering which you believe from the evidence he endured as the direct result of his injuries concerning which you have heard evidence, not to exceed the sum of $10,000.00.

"If you find for the defendant, Louisville Railway Company, you will say so by your verdict and no more."

It is insisted that, as plaintiff's evidence shows Kendall was hit in the face twice and knocked down before he fired the pistol, the court should have held as a matter of law that he was acting in his self-defense, and that it was error to submit an issue on this point in instructions Nos. 1 and 2. On this assumption it is further argued that as Kendall was justified in using such force as was

reasonably necessary to defend himself, no recovery should be permitted for any force exercised by him in so doing except such force as was in excess of what was reasonably necessary for self-protection, and therefore instruction (No. 3), on the measure of damage, was erroneous. The first proposition is clearly untenable. Admittedly Kendall left his place of work, walked the length of the car, and accosted Kramer. The latter says he did this aggressively, indicating that he was armed by slapping his pocket as he approached; that he then defied plaintiff, and stepped back and made a gesture as if to draw a weapon by menacingly thrusting his hand in his pocket. If true, this would constitute an assault and justify plaintiff in striking him with his fist in his own defense, and, if as stated by plaintiff, Kendall persisted in his efforts until he procured and fired his pistol, there was an unbroken continuity of action from the gesture of drawing a weapon until the climax.

There is more ground for criticism of the third instruction. If Kendall did not act in self-defense, or if he first assaulted Kramer and made Kramer's assault upon him necessary in his self-defense, Kramer was entitled to recover such damages as directly resulted from all the injuries thereby inflicted upon him. As the evidence upon all these issues was conflicting, the instruction is correct so far as it goes. But, if Kendall was acting in self-defense and had not made the first attack, plaintiff's recovery should be limited to the injuries, if any, resulting from excessive force exercised by Kendall in repelling that assault, and, in view of the conflict in evidence, it would have been proper to embody this hypothesis in a separate instruction or by a qualification in instruction No. 2. However, we cannot say that defendant was prejudiced by the failure to instruct on this point, because under his version of the encounter Kramer began the attack by striking him with a deadly weapon, while he was unarmed; that he procured the pistol from Kramer at a time when Kramer was kicking him in the face. If the jury had accepted this version as true, it is highly improbable that they would have reached the conclusion that he exercised excessive force in defending himself. It is therefore evident that the jury found under plaintiff's version of the affair, and that defendant was not prejudiced by the failure to instruct upon this point.

Complaint is made that the verdict is excessive. While it did not produce lasting injury, it must be admitted that a gunshot wound on the abdomen is a very serious matter, and no tribunal is better qualified than a jury to determine what is a sufficient compensation for the mental and physical suffering resulting therefrom. Such a verdict will not be set aside as excessive unless it strikes one at first blush as being the result of passion or prejudice, and a verdict for $750 does not impress us in that way.

Wherefore, perceiving no error, the judgment is affirmed.